United States District Court
Southern District of Texas
**ENTERED**
August 09, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARQUIS EDWIN COULTER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-cv-2105 |
| | § | |
| DEERE & COMPANY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Marquis Edwin Coulter was driving a John Deere mower when it flipped and caught on fire in 2017.  Coulter was badly burned.  He and his family sued in state court, naming the mower manufacturer, Deere & Company, and the sellers, Tellus Equipment Solutions, LLC, f/n/a Ag-Pro Texas, LLC, and Cardinal Heavy Equipment Holdings, LLC.  The defendants removed, and Coulter moved to remand for lack of complete diversity.  The court denied the motion to remand and granted the motion to dismiss, with leave to amend.  (Docket Entry No. 47).

Coulter amended the complaint against Deere; restated the claims against Tellus and Cardinal, not as sellers but as entities that serviced and repaired the mower; and added Ag-Pro Texas, LLC and Ag-Pro, LLC, the predecessor entities of Tellus, as defendants.  The pending motions challenge the addition of the Ag-Pro entities as parties; challenge the reasserted claims against Tellus and Cardinal; challenge the assertion of any claims other than design and marketing defects against Deere; and move to strike certain parts of the second amended complaint with dramatic allegations against Deere.  (Docket Entry Nos. 47, 58–59).

Based on the pleadings; the motions, response, and reply; and the applicable law, the court grants the motion to dismiss Tellus, Cardinal, and the Ag-Pro entities, leaving federal jurisdiction unimpaired.

The court grants, with prejudice and without leave to amend, Deere's motion to dismiss as to the breach of implied warranty of fitness for a particular purpose, gross negligence, and punitive damages claims.  The court denies the motion to dismiss as to the manufacturing defect and the breach of implied warranty of merchantability claims, and denies the motion to strike.

The reasons for these rulings are explained below.

## I.    Background

Marquis Coulter alleges that he was properly operating a John Deere mower when it flipped over and caught on fire.   (Docket Entry No. 46 at 4).  He suffered second- and third-degree burns and required an extended hospital stay.  (Docket Entry No. 46 at 4).  The family, including Coulter, his wife, Trish Yvonne Snyder, and his minor children, M. C., K. C., and J. C., seek damages based on a loss of consortium.  (Docket Entry No. 46 at 4).  Coulter and Snyder, representing themselves and their children, (together, "Coulter"), sued Deere, Tellus (f/n/a Ag-Pro Texas), and Cardinal in state court, alleging that Deere was strictly liable for design defects, manufacturing defects, failures to warn, and breach of implied warranties of fitness for a particular purpose and merchantability, as well as negligence and gross negligence.   (Docket Entry No. 1-3 at 5–12). Coulter alleged that Tellus and Cardinal were negligent and grossly negligent in selling the mower. (*Id*.)   Deere removed to federal court, arguing that diversity jurisdiction was present because Tellus and Cardinal were improperly joined.  (Docket Entry No. 1 at ¶ 7).

In March 2022, the court declined to consider the post-removal amended complaint that added the allegations against nondiverse defendants Tellus and Cardinal; found that Tellus and

Cardinal were improperly joined; denied Coulter's motion to remand; and granted Deere's Rule 12(b)(6) motion to dismiss the first amended complaint, without prejudice.  (Docket Entry No. 44 at 2).  Coulter has filed a second amended complaint.  (Docket Entry No. 46).  Coulter again asserts claims against Tellus and Cardinal, defendants that were previously dismissed, and adds the Ag-Pro entities as defendants.  (Docket Entry No. 46 at ¶¶ 7-10).  Coulter alleges that Tellus, Cardinal, and the Ag-Pro entities "failed to use ordinary care while maintaining, servicing, and repairing" the mower, (Docket Entry No. 46 at ¶ 28), amounting to negligence and gross negligence.  (*Id*. at ¶ 23).  Coulter alleges that Deere negligently designed and manufactured the mower by failing to provide adequate rollover protections.  (Docket Entry No. 46 at ¶¶ 16-17).  Coulter recites a history of Deere mowers rolling over, igniting, and being recalled due to fire and crash risks.  (Docket Entry No. 46 at ¶¶ 40–46).  Coulter also alleges that Deere failed to warn of the unreasonable dangers of using the mower.  (*Id*. at ¶ 21).

Deere moves to dismiss the claims against Tellus, Cardinal, and the Ag-Pro entities, arguing that the court has already ruled that Coulter cannot recover against Tellus and Cardinal; that Coulter's claims against the Ag-Pro entities are the same as the claims against Tellus and Cardinal; that Coulter's attempt to add claims against Ag-Pro Texas is intended to destroy diversity and is untimely; and that Coulter cannot show that this Texas court has personal jurisdiction over Ag-Pro, LLC.  (Docket Entries Nos. 47, 58–59).

Coulter has responded, and Deere and the Ag-Pro entitles have replied.  The arguments are analyzed below.

## II.    Subject Matter Jurisdiction and Improper Joinder

### A.    The Legal Standards

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "When an amendment would destroy jurisdiction, most authorities agree that leave should be denied unless there exist strong equities in its favor." *Whitworth v. TNT Bestway Transp. Inc.*, 914 F. Supp. 1434, 1435 (E.D. Tex. 1996) (quoting 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL, § 1447 at 562 (2d ed. 1990)); *see also Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).

"To determine whether jurisdiction is present for removal, [courts] consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). But to determine whether to permit a nondiverse party's joinder after removal, the court balances the equities using four factors: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in asking for amendment; (3) whether the plaintiff will be significantly injured if the amendment is not allowed; and (4) other equitable factors. *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).

### B.    The *Hengsens* Factors

When analyzing if removal was proper, courts consider only the state court petition, but when analyzing whether nondiverse defendants should be added post-removal, the amended complaint is the operative pleading. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265

4

(5th Cir. 1995), *Hensgens v. Deere & Co.*, 833 F.29 at 1182 (*citing* Fed. R. Civ. P. 15(a); *see also*

*Cobb v. Delta Exp., Inc.*, c, 677–78 (5th Cir. 1999)).  When a party seeks to add a nondiverse party,

the court should scrutinize the amendment "more closely than an ordinary amendment."  *Moore v.*

*Manns*, 732 F.3d 454, 456 (5th Cir. 2013) (per curiam) (citing *Hensgens v. Deere & Co.*, 833 F.29

at 1182).  This court previously found that Tellus and Cardinal were improperly joined based on

the claims Coulter asserted against them as sellers, (Docket Entry No. 44 at 1), but that does not

preclude Coulter from attempting to bring new and different claims based on a different theory of

liability against them postremoval, or from attempting to add a new defendant on a new theory of

liability.  The *Hensgens* factors apply in deciding whether the court should permit Tellus, Cardinal,

and Ag-Pro to be joined now for the alleged negligence in repairing or servicing the mower.  *See*

*Hensgens*, 833 F.2d at 1182.

The first factor is "the extent to which the purpose of the amendment is to defeat federal

jurisdiction."  *Hensgens*, 833 F.2d at 1182.  That is analyzed by considering "whether the plaintiffs

knew or should have known the identity of the nondiverse defendant when the state court

complaint was filed."  *Randolph v. Avis Budget Car Rental, LLC*, No. CV H-17-3638, 2018 WL

1932656, at *1 (S.D. Tex. Apr. 23, 2018) (citing *De la Cruz v. Home Depot U.S.A., Inc.*, No. 4:15-

1566, 2015 U.S. Dist. LEXIS 143856, at *6 (S.D. Tex. Oct. 22, 2015)).  Some courts consider

postremoval repeated attempts to join nondiverse defendants as indicating an effort to avoid federal

jurisdiction.  *See, e.g.*, *Criswell v. Wal-Mart Stores, Inc.*, No. 1:09-CV-502, 2009 WL 5061826, at

*2 (E.D. Tex. Dec. 15, 2009) (discussing the first *Hensgens* factor in different jurisdictions).  A

belated attempt to join a nondiverse defendant, without an indication that new information about

that defendant was obtained through discovery or otherwise, may indicate that the amendment is

sought to destroy diversity.  *Id*.

Ag-Pro Texas, LLC moves to be dismissed for the same reason as Tellus and Cardinal—that it is included only to defeat diversity. (Docket Entry No. 58 at 1). Coulter argues that in the process of discovery, after filing the first amended complaint, he learned that Ag-Pro Texas, had sold its assets and liabilities to Tellus. Coulter argues that on July 19, 2022, after Ag-Pro Texas, LLC moved to dismiss, Coulter received the asset purchase agreement between Ag-Pro Texas, LLC and Tellus. The agreement shows that Ag-Pro Texas, LLC, retained any liabilities or obligations resulting from the operations of the business before the closing date of August 28, 2020, encompassing the date of Coulter's injuries. (Docket Entry 38-2 at 3; Docket Entry No. 62 at 2). The asset purchase agreement was filed with the defendants' surreply to Coulter's motion to remand on February 18, 2022. (Docket Entry No. 38-2). The asset purchase agreement shows that Ag-Pro, LLC, guaranteed Ag-Pro, Texas's obligations under the agreement. (Docket Entry No. 63). Coulter continues to allege that the Ag-Pro entities were added because of opportunities they had to service, repair, or modify the mower, which may have caused the fire. (Docket Entry No. 62 at 3). But Coulter knew that Tellus was formerly known as Ag-Pro Texas, LLC, when Coulter filed the state court petition, (Docket Entry No. 1-3 at 1), and when Coulter filed the first amended complaint, (Docket Entry No. 14). The asset purchase agreement is not new information and does not explain why the Ag-Pro entities were not included earlier.

Coulter added to the second amended complaint a list of specific dates on which the mower, particularly the balance mechanisms and fuel system, were repaired or serviced. (Docket Entry No. 46 at 7–10). It is unclear whether Coulter had these records or if they were obtained from a different custodian. If Coulter discovered the information as to what repairs and servicing work were done only after investigating his own records on the mower, Coulter has not explained why this investigation did not occur before he filed the state-court petition. Coulter did not explain the

failure to include these allegations in the earlier complaints.  *See Singh v. 15625 FT. Bend, Ltd.*, No. CV H-20-3648, 2020 WL 13133219, at *3 (S.D. Tex. Dec. 22, 2020) (the plaintiffs did not explain why they did not name the nondiverse defendant when the state-court complaint was filed; why they needed an expert to learn of the nondiverse defendant; and, if they needed an expert to identify the defendants, why they did not retain one earlier); *Gallegos v. Safeco Ins. Co. of Indiana*, No. CIV.A. H-09-2777, 2009 WL 4730570, at *3 (S.D. Tex. Dec. 7, 2009) (the evidence showed that the plaintiff received letters with the nondiverse defendant's name and contact information before the state-court petition was filed).  "In light of the . . . longstanding knowledge of [the defendant's] identity and role, the court finds that the primary purpose of the motion is to defeat federal jurisdiction."  *See Singh*, 2020 WL 13133219, at *3.  This factor weighs against granting joinder of Tellus, Cardinal, and the Ag-Pro entities.

Second, the court looks at whether the plaintiff has been dilatory in asking for the amendment.  *Hensgens*, 833 F.2d at 1182. "Although courts generally find that a plaintiff is not dilatory in seeking to amend a complaint when no trial or pre-trial dates were scheduled and no significant activity beyond the pleading stage has occurred, the analysis is different when the proposed amendment is to add nondiverse defendants shortly after removal based on federal diversity jurisdiction."  *Multi–Shot, LLC. v. B & T Rentals, Inc.*, No. H–09–3283, 2010 WL 376373, at *9 (S.D. Tex. Jan. 26, 2010) (citations omitted).  In cases where removal is based on federal diversity jurisdiction, courts have found as little as two months after filing the original complaint or 30 days after removal to be dilatory.  *Id.* (quoting *Irigoyen v. State Farm Lloyds*, No. 03–0324, 2004 WL 398553, at *3 (S.D. Tex. Jan. 5, 2004)).  Although this case is still at the pleading stage, and Coulter complied with the deadline for filing a second amended complaint, the addition of the nondiverse parties is not justified by information newly acquired in discovery or a

change in circumstances.  (Docket Entry No. 32).  Coulter filed the second amended complaint

with the reasserted claims against previously dismissed nondiverse parties and claims against the

newly added parties eleven months after filing the state-court complaint and nine months after

removal.  This factor weighs against granting joinder.

The third factor is whether Coulter will be significantly injured if the amendment is not

allowed.  Courts look to whether "(i) the already named diverse defendant would be unable to

satisfy a future judgment; and (ii) the possibility of a separate state court proceeding weighs against

denying the proposed amendment."  *Singh*, 2020 WL 13133219, at *4 (quoting *Agyei v. Endurance

Power Prods.*, 198 F. Supp 3d. 764, 777 (S.D. Tex. 2016).  The question is "whether a plaintiff

can be afforded complete relief in the absence of the amendment."  *Lowe v. Singh*, No. H-10-1811,

2010 WL 3359525, at *3 (S.D. Tex. Aug. 23, 2010).

There is no basis to conclude that Deere will be unable to satisfy a future judgment in this

case, even if it is large.  There is no basis to conclude that the financial resources of Tellus,

Cardinal, or Ag-Pro are needed to respond to a large judgment.

At most, Coulter asserts a concern over the potential loss of "a viable alternative theory of

recovery, should it be uncovered in discovery that the negligent repair complaints have merit and

the alternative claims do not."  (Docket Entry No. 53, at 5).  Even if Coulter had to separately

pursue the state-law claims for negligence in servicing or repairing against the nondiverse

parties—Tellus, Cardinal, and Ag-Pro—courts have held that "[h]aving to litigate . . . separate

claims in separate proceedings, one state and one federal, is not a significant injury under

*Hensgens*."  *Arthur v. Stern*, No. H-07-3742, 2008 WL 2620116, at *6 (S.D. Tex. June 26, 2008);

*see also Federick v. Mercedes-Benz USA,* 2020 WL 3100203, at *8 (S.D. Tex. June 11, 2020)

(claims for negligent maintenance and products liability were sufficiently different to "proceed

separately with little by way of judicial inefficiency."). Coulter alleges the same injuries and damages under both theories of recovery, but the claims against Tellus, Cardinal, and Ag-Pro arise from the maintenance, repair, and service of the mower performed after manufacture and sale, while the claims against Deere arise from the design, manufacture, and marketing of the mower. The claims are sufficiently distinct to be tried separately without sacrificing judicial or party efficiency. The third factor does not favor joinder.

"The final factor asks about other equitable factors, which include whether granting leave to amend would deprive a defendant of a properly invoked federal forum and whether denying leave to amend would result in parallel state-court proceedings." *Randolph v. Avis Budget Car Rental, LLC*, No. CV H-17-3638, 2018 WL 1932656, at *2 (S.D. Tex. Apr. 23, 2018). Deere properly invoked the federal forum. Even if denying leave to amend might result in parallel state-court proceedings, this is insufficient to deny joinder under *Hensgens.*

Denying joinder as to Tellus Equipment Solutions, LLC; Cardinal Heavy Equipment Holdings, LLC; and Ag-Pro Texas, LLC is proper under the *Hensgens* factors. The claims against these defendants are dismissed, without prejudice to Coulter's right to proceed against them in state court.

### C.   Ag-Pro, LLC's Motion to Dismiss for Lack of Personal Jurisdiction

Ag-Pro, LLC argues that it has insufficient connections to Texas or to the mower servicing and repairs alleged to have caused or contributed to cause the rollover and fire, as needed for personal jurisdiction. (Docket Entry No. 59 at 7). Coulter alleged that Ag-Pro, LLC, is headquartered in Georgia and conducts unspecified business in the State of Texas, with no allegation as to the principal place of business. (Docket Entry No. 46 at ¶ 10). Ag-Pro, LLC filed a motion to dismiss, arguing that this court lacks personal jurisdiction. (Docket Entry No. 59).

The motion is supported by an affidavit from Matthew Carlton, Ag-Pro, LLC,'s Chief Operating Officer.  (Docket Entry No. 59-1 at 2).

The court does not have general jurisdiction over Ag-Pro, LLC because its headquarters and principal place of business are in Georgia and no systematic and ongoing connections with Texas are shown in the record.  *Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 337 (5th Cir. 2020).  "Specific jurisdiction applies when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'"  *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Panda Brandywine*, 253 F.3d at 868).  "The non-resident's purposeful availment must be such that the defendant should reasonably anticipate being haled into court in the forum state."  *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (citation and internal quotation marks omitted).

Coulter has alleged only that Ag-Pro, LLC, along with three other defendants, "serviced, maintained, and repaired the mower."  (Docket Entry No. 46 at 5, 12).  Coulter alleges that "Defendants, including Ag-Pro, LLC, put into the stream of commerce a Deere mower, which could be purchased, and was in fact purchased in Texas" by Coulter.  (Docket Entry No. 63 at 4). But Carlton attested that Ag-Pro does not service, maintain, or repair any products in Texas or conduct any business in Texas.  (Docket Entry No. 59-1 at 2).  Carlton attested that Ag-Pro, LLC does not have, and has never had, any dealerships in Texas, and that it is a "distinct and independent corporate entity from Ag-Pro Texas, LLC."  (Docket Entry No. 59-1 at 2–3).

Coulter argues that Ag-Pro, LLC cannot rely on a self-serving affidavit, without supporting documentation, to defeat personal jurisdiction.  Coulter notes that only a prima facie showing of personal jurisdiction is needed, with the court resolving all conflicts in the record in favor of

10

finding jurisdiction. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 211 (5th Cir. 2016). A district court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery" in determining whether the plaintiff made a prima facie showing. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

Coulter has not pointed to a basis to dispute Ag-Pro, LLC's affidavit evidence that it does not service, maintain, or repair any products in Texas and is a separate corporate entity from Ag-Pro Texas, LLC. Coulter points to Ag-Pro, LLC's guarantee of Ag-Pro Texas, LLC's obligations in the asset purchase agreement with Tellus. That agreement is not the basis of Coulter's claims against Ag-Pro, LLC. Ag-Pro, LLC argues that there is no evidence that the guarantee was made or performable in Texas, and the asset purchase agreement selected Delaware and New York law. (Docket Entry No. 65-1 at 4). Coulter provides no information about the nature of this guarantee from which the court could infer that Ag-Pro, LLC had "'fair warning' that [its] activities may subject [it] to another state's jurisdiction" and be able to "structure its primary conduct to lessen or avoid exposure to a given State's courts." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021).

"When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Wyatt v. Kaplan,* 686 F.2d 276, 284 (5th Cir. 1982). Coulter has not provided a basis to dispute the evidence showing that Ag-Pro, LLC does not have minimum contacts in Texas and he has not alleged facts supporting that discovery would change this jurisdictional analysis.

The record discloses no basis to assert general or specific personal jurisdiction over Ag-Pro, LLC in this Texas court, or to allow for jurisdictional discovery.

### III.    Deere's Motion to Dismiss

#### A.    The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be

exposed at the point of minimum expenditure of time and money by the parties and the court."
*Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550
U.S. at 558).  A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the
facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which
judicial notice may be taken under Federal Rule of Evidence 201."  *Inclusive Cmtys. Project, Inc.
v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

### B.    Analysis

#### 1.    Manufacturing Defects

A manufacturing defect "exists when a product deviates, in its construction or quality, from
the specifications or planned output in a manner that renders its unreasonably dangerous."  *Casey
v. Toyota Motors Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014).  The plaintiff  has
the burden of proving that "the product was defective when it left the hands of the manufacturer
and that the defect was a producing cause of the plaintiff's injuries."  *Id.*  The "touchstone of a
manufacturing defect claim is proof that the allegedly defective product differs from other products
in the same product line."  *Id.* at 329.  A manufacturing defect claim is "impermissibly conclusory
and vague" when "it does not specify the manufacturing defect; . . . specify a causal connection
between the failure of the specific manufacturing process and the specific defect in the process
that caused the personal injury[;] [or explain] how the manufacturing process failed, or how it
deviated from an approved manufacturing process."  *Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th
Cir. 2011).  Coulter alleges that the mower had eleven parts that "deviated in [their] specifications
in one or more of the following respects which resulted in one or more fuel leaks."  (Docket Entry
No. 46 at ¶ 60).  These allegedly deviating parts include specific attachments of fuel lines, seals,

welding, clamps, connectors, and "brittle plastic parts and clamps" in ways that were "not up to specification and failed causing fuel [or gas] to spill out." *Id.*

Coulter's allegations of manufacturing defects are accompanied by exemplar figures of the parts at issue, with explanations as to how the parts should have been attached in the fuel system. The allegations identify what the fuel system should have looked like and allege a causal connection between the deviations and the fire that resulted when the mower flipped. The allegations state that the specified parts were "not up to specification and failed." (Docket Entry No. 46 at ¶ 60). There is no allegation as to how the parts on the mower at issue deviated from the specifications, how the manufacturing process failed, or how it deviated from the approved manufacturing process. Additional facts will be needed to prove the manufacturing defect claim, but the court concludes that the allegations are sufficient at the motion to dismiss stage.

The motion to dismiss the claim for manufacturing defect is denied.

### 2.     Implied Warranty of Merchantability

The elements of a cause of action for breach of the implied warranty of merchantability are that: "1) the defendant sold or leased a product to the plaintiff; 2) the product was unmerchantable; 3) the plaintiff notified the defendant of the breach; and 4) the plaintiff suffered injury." *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007) (internal citation omitted). "To recover damages for breach of implied warranty of merchantability, a plaintiff must prove there was some defect in the product, that is to say, a condition of the goods that renders them unfit for the ordinary purpose for which they are used." *Scott v. Dorel Juvenile Group, Inc.*, 456 F. App'x 450, 456 (5th Cir. 2012). Deere has not moved to dismiss the claims for design defects or marketing defects.

14

A product is "unmerchantable" if it "cannot pass without objection in the trade," is unfit for ordinary purposes, or does not conform to the promises or factual affirmations on its label. *Herbst v. Deere & Co.*, 2021 No. 3:21-CV-44, 2021 WL 5567379, at *4 (S.D. Tex. Nov. 29, 2021) (quoting *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App.—Tyler 2003, no pet.)).  "To pass without objection, a product must be of a quality comparable to other products that are sold in that line of trade under the contract description." *Id.*  "For a product to be unfit for ordinary purposes, it must have a defect, *i.e.*, the product lacks something necessary for adequacy." *Id.*  That can occur when the product "does not accomplish the purposes for which it was manufactured, or when it is constructed in a manner which makes it 'unreasonably dangerous.'" *Id.*

The plaintiff in *Herbst* was standing near an excavator and injured when struck by the swinging arm on the machine.  *Herbst*, 2021 WL 5567379, at *1.   The plaintiff alleged that the machine breached an implied warranty of fitness for its intended purpose because it lacked an alarm to alert bystanders when the arm began to swing.  *Id.*  The court held that the plaintiff failed to allege a claim for breach of implied warranty because "the excavator can be both fit for its intended purpose (excavating, presumably) and unreasonably dangerous from a strict-products-liability standpoint." *Id.* at *5.  Similarly, in *Sanchez v. QuikTrip Corp.*, No. 3:18-CV-1337-B, 2019 WL 1380310, at *2 (N.D. Tex., Mar. 27, 2019), the court found insufficient the plaintiff's allegations about a dough-cutting machine.  The allegation that the machine breached the implied warranty of fitness for its ordinary purpose because it "impales the finger of a person when that person cleans the machine," was insufficient because cleaning was not its intended purpose.  *Id.*

Coulter alleged that he was injured when his mower flipped over while he was mowing an uneven part of his lawn and immediately caught on fire.  (Docket Entry No. 46 at ¶ 14).  Unlike

15

*Herbst,* which involved a plaintiff injured when he was standing near the excavator and not operating it or working with it, or *Sanchez,* which involved a plaintiff injured while cleaning, not using, a machine, Coulter alleges that he was injured while using the mower for its intended purpose.  The motion to dismiss the claim for breach of the implied warranty of merchantability is denied.

### 3.      Implied Warranty of Fitness for a Particular Purpose

"Under Texas law, an implied warranty of fitness for a particular purpose arises when 1) the seller has reason to know of a particular purpose for which the goods are required, and 2) the buyer is relying on the seller's skill or [judgment] to select goods suitable for that particular purpose." *Bob Davis Paint & Drywall Inc. v. Valspar Corp.*, 452 F. Supp. 3d 589, 598 (S.D. Tex. 2020) (quoting *Coghlan v. Aquasport Marine Corp.*, 73 F. Supp. 2d 769, 774 (S.D. Tex. 1999). "But the 'particular purpose' must differ 'from the usual and ordinary use of the goods.'" *Id.*

Coulter alleges that the mower was not fit for "foreseeable use" but does not include allegations of a particular purpose that was different from the usual and ordinary use of the mower. (Docket Entry No. 46 at ¶ 90).  Coulter has not alleged that he was using the mower for a particular purpose different from its ordinary purpose when it flipped.   The elements of a breach of implied warranty of fitness for a particular purpose are not met.

### 4.      *Res Ipsa Loquitur*

Coulter alleges that Deere's negligence is sufficiently alleged under the doctrine of *res ipsa loquitur*, because there was no intervening defect between Deere's possession of the mower and the accident, and the accident is therefore "directly attributable to the defect caused by Deere." (Docket Entry No. 46 at ¶ 104)

The doctrine of *res ipsa loquitur*, allowing a jury to infer negligence, may be applied only if: "(1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant." *Travellers Lloyds of Texas Ins. Co. v. Daewoo Electronics Corp.*, No. CV H-05-1052, 2006 WL 8451581, at 3 (S.D. Tex. May 15, 2006).

The mower was not under Deere's control when Coulter's accident occurred.  It had been outside of Deere's control for more than three years.  Coulter purchased the mower on May 31, 2017, and the rollover occurred on October 12, 2020.  (Docket Entry No. 46 at ¶¶ 14, 29).  *Res ipsa loquitur* is inapplicable.

### 5.  Gross Negligence

Gross negligence requires a plaintiff to allege facts showing that:

(1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(2) the actor must have [had] actual, subjective awareness of the risk involved, but nevertheless proceed[ed] in conscious indifference to the rights, safety, or welfare of others.

*Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (per curiam).  "Under the first, objective element, an extreme risk is 'not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff.'"  *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014)).  "Under the subjective element, 'actual awareness means the defendant knew about the peril, but its acts or omissions demonstrated that it did not care.'"  *Id.*  "Circumstantial evidence may suffice to prove either element."  *Id.*  "Under Texas law, 'actual knowledge' of a specific product defect is not a required element of either negligence or gross negligence."  *Evans v. Kawaski Motors Corp., USA*, No. CIV.A. H-15-659, 2015 WL 4434073, at *5 (S.D. Tex. July 17, 2015).

17

Coulter alleged that Deere knew of the risk of rollover because the mower was manufactured with rollover protection.  (Docket Entry No. 46 at ¶ 17).  Coulter argues that discovery into Deere's internal communications is needed to learn about Deere's actual knowledge of the rollover and ignition risks when it designed, manufactured, and developed marketing information and labels for the mower.  (Docket Entry No. 53 at 9).  Coulter argues that the fact that the mower rolled over and was engulfed in flames is sufficient to infer the existence of these risks and that Deere's inclusion of rollover protection shows an actual, subjective awareness of the foreseeable risk that the mower could roll over.  (Docket Entry No. 53 at 9).  Deere argues that rollover and fire, standing alone, are not proof of defect.  (Docket Entry No. 55 at 10).

Coulter's complaint recites the requirements of a gross negligence claim, but does not allege facts supporting conscious indifference or subjective awareness of the foreseeable risk that the mower could roll over and ignite during normal use.  (Docket Entry No. 46 at ¶ 34–38).  The fact that Deere took steps to protect the operator from injury in a rollover does not mean that it had subjective awareness of an extreme risk of that a rollover would occur, much less of an extreme risk that a fire would result.  In *Suarez v. City of Texas City*, 465 S.W.3d 623, 634 (Tex. 2015), the court explained that the presence of warning signs at beaches was insufficient evidence to establish awareness of the extreme risk posed by swimming in the Gulf of Mexico after a major hurricane. The court concluded that the warning signs were equally consistent with mere knowledge of risks inherently associated with open-water swimming, so it was not evidence of "subjective awareness and of conscious indifference to the enhanced marine hazards."  465 S.W.3d 623, 634 (Tex. 2015). The presence of warnings or safety measures—even if they are inadequate—is insufficient to show "conscious indifference" to a risk.  Coulter has not alleged facts showing that Deere acted with

actual, subjective knowledge of an extreme degree of risk or that Deere was consciously indifferent to the safety of mower users.  The gross negligence claim is dismissed.

### 6.   Punitive Damages

Texas law provides that:

> "(a) exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from:
> (1) fraud;
> (2) malice; or
> (3) gross negligence.
>
> (b) The claimant must prove by clear and convincing evidence the elements of exemplary damages as provided by this section. This burden of proof may not be shifted to the defendant or satisfied by evidence of ordinary negligence, bad faith, or a deceptive trade practice.

Tex. Civ. Prac. & Rem. Code § 41.003.  Because the claim for gross negligence is dismissed, the claim for exemplary damages is dismissed as well.

## IV.   Deere's Motion to Strike Paragraphs 39 through 46

Deere moves to strike paragraphs 39 through 46 of the second amended complaint, arguing that they contain "immaterial, impertinent, and scandalous allegations."  (Docket Entry No. 47 at 17).  Paragraphs 39 through 46 allege a history of Deere mower accidents and recalls.  (Docket Entry No. 46 at 12–15).

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A motion to strike "is appropriate only upon a showing of prejudice to the moving party."  *Stross v. Active Network, LLC*, No. 1:19-CV-8-RP, 2019 WL 2213883, at *4 (W.D. Tex. May 22, 2019).   The decision to grant a motion to strike is within the court's discretion. *Jacobs v. Tapscott*, 2004 WL 2921806, at *2 (N.D. Tex. Dec.16, 2004), *aff'd on other grounds,* 277 F. App'x 483 (5th Cir. 2008).  When, as

here, the motion to strike is based on the presence of "redundant" and "immaterial" matter, courts are particularly reluctant to grant it. "Both because striking a portion of a pleading is a drastic remedy, and because it is often sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *Id.* (quoting *FDIC v. Niblo,* 821 F. Supp. 441, 449 (N.D. Tex. 1993). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). Immateriality may be established established by showing the challenged allegations have "no possible relation to the controversy." *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.,* 306 F.2d 862, 868 (5th Cir. 1962)).

Coulter's second amended complaint discusses other accidents or incidents involving allegedly defective John Deere mowers and tractors that were recalled or refitted from 2011 to 2018, including because of the risk of fire. (Docket Entry No. 46 at ¶¶ 40–46). Deere argues that allegations of other mower accidents or incidents are permissible only if they are "substantially similar" to the product and accident made the basis of this suit. (Docket Entry No. 47 at 15). Deere moves to strike the allegations that fall outside this limit.

Under Texas law, "other accidents may be relevant to show whether: a product was unreasonably dangerous; a warning should have been given; a safer design was available; or a manufacturer was consciously indifferent toward accidents in a claim for exemplary damages." *Nissan Motor Co. Ltd. V. Armstrong*, 145 S.W.3d 131, 138 (Tex. 2004). The allegations of other mower accidents in paragraphs 39 through 46 are similar to the allegations relating to the accident that injured Coulter. (Docket Entry No. 46 at ¶¶ 93–99, 79–84, 47–55, and 105–111).

A filing is not scandalous merely because "the matter offends the sensibilities of the objecting party." *Coney*, 689 F.3d at 380. A matter is not "scandalous" for purposes of Rule 12(f) if it is "directly relevant to the controversy at issue and [] minimally supported in the record." *Id.* Deere has not shown that Coulter's allegations about previous accidents and recalls of Deere mowers are immaterial, scandalous, or that they would cause unfair prejudice.

The motion to strike is denied.

## V.    Conclusion

The court declines to permit joinder of Tellus Equipment Solutions, LLC, f/n/a Ag-Pro Texas, LLC, Cardinal Heavy Equipment Holdings, LLC, and Ag-Pro Texas, LLC. The court also finds that it lacks personal jurisdiction over Ag-Pro, LLC. Tellus Equipment Solutions, LLC, f/n/a Ag-Pro Texas, LLC, Cardinal Heavy Equipment Holdings, LLC, and Ag-Pro, Texas, LLC are dismissed. Ag-Pro, LLC's motion to dismiss for lack of personal jurisdiction is granted.

Deere's motion to dismiss is granted as to Coulter's claims for breach of implied warranty of fitness for a particular purpose, gross negligence, and punitive damages. Coulter has amended twice. Because further amendment would be futile, and these claims are dismissed with prejudice.

Deere's motion to dismiss Coulter's claims for manufacturing defect and for breach of implied warranty of merchantability is denied. Deere did not move to dismiss the claims for design defect or marketing defect, so those claims remain as well. Deere's motion to strike paragraphs 39 through 46 is denied.

The court will hold a status conference on **August 19, 2022, at 12:00 p.m.**, by video.  A Zoom link will be sent in advance.  The parties must submit a revised joint proposed scheduling order and docket control order by August 17, 2022.

SIGNED on August 9, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge